## Montanus, et al. v. Buschmeyer, et al.

(Decided March 17, 1914).

Appeal from Jefferson Circuit Court
(Common Pleas Branch No. 1).

1. Landlord and Tenant—Contract Between—Destruction of Property by Fire—Restoration of Building—Action for Rent for the Time Property Was Unoccupied.—In an action by a landlord to recover of the tenant the amount of rent accruing from the time the building was restored after it had burned until another tenant had been secured, the contract provided that the lessor within five days after the property had been destroyed, or rendered unfit for habitation, should give notice to the tenant whether the

property should be restored, or the lease cancelled and the notice was given accordingly that the property would be restored and when restored possession would be given the lessee, the defense interposed that the lessee had cancelled the lease and given notice thereof was not sufficient and judgment was properly rendered against him for the amount of the rent accruing under his contract from the time of the restoration of the property until its occupancy by another tenant.

2. Landlord and Tenant—Contract Between.—While the provision in the contract referred to is in a sense unilateral, the lessors under it were the sole judges as to whether they would rebuild, or cancel the contract and appellants entered into the contract with full knowledge of this provision.

3. Landlord and Tenant—Lease.—Leases are constantly made in which one of the parties is given various options or privileges without any corresponding privilege to the other, and it has never been held that the lease was rendered void by such a provision.

FRED FORCHT, JR., for appellants.

HUMPHREY, MIDDLETON & HUMPHREY for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

This litigation arises from the following state of facts. On October 22, 1908, the appellants, wall-paper merchants, rented from the appellees for a term of five years a four-story brick storehouse in Louisville, and agreed to pay as rent therefor $125.00 monthly. Appellants took possession under the lease and continued to occupy the premises until the night of September 23, 1911, when the house and contents were destroyed by fire, and without any fault of appellants; that is, the fire was communicated from an adjacent building.

The rent contract was in writing, signed by the parties, and the original is filed with the transcript. It recites the term of the lease, with a covenant of appellees to keep the appellants in quiet possession throughout the period; then there is a covenant as to the amount of the rent and when payable, and a further acknowledgment that the appellees have completed certain repairs which appellants had required of them by virtue of a written contract made prior to the lease; then follows this stipulation:

"In case the premises herein leased or any part thereof shall, during the term of this lease, be destroyed by fire or other casualty, so that the same shall thereby be rendered unfit for habitation or for the purpose designed, which is to be determined by the lessor, then and

in that event the lessor may at any time within five days after the happening of such casualty, by notice in writing to the lessee or those having estate in the premises, determine (or cancel) this lease, and unless it be so determined, the rent hereinbefore stipulated to be paid, or a just and proportional part thereof, shall be suspended or abated until the premises shall have been by the lessor rebuilt or repaired and put in proper condition for use and habitation, and the rent shall thereupon recommence immediately after said rebuilding or repairing shall have been completed; but in any event the rent shall be paid up to the day of said fire or casualty.''

On September 26th, two days after the fire, the appellees notified appellants in writing that they elected to restore the premises to their original condition, and when so restored they would give the appellants possession, and would expect to have the lease continued. On September 28th appellants notified the owners of the building that, because of the fire, they could not use the premises and that they therefore elected to cancel the lease. Disregarding appellants' notice, the appellees restored the premises to their original condition, and on December 22nd notified appellants that the premises would be ready for occupancy by January 2, 1912, and on that day the premises were ready for occupancy. The appellants, however, refused to take possession, or to recognize the lease in any way. The appellees thereupon, as they allege, made efforts to secure other tenants and finally did secure such, but before they were able to do this eight months elapsed after the premises were ready for occupancy. They sued appellants for the rent accruing during this eight months period. No claim is made for rents from the time of the fire until the premises were again ready for occupancy, for by the terms of the lease rent for that period was abated. Appellants' demurrer to the petition was overruled, and then by answer they relied upon their notice in cancellation of the lease, considering that they had a right so to do, under the contract, by reason of the fire. The court sustained demurrer to the answer, and entered judgment for the amount claimed against appellants, they refusing to plead further.

From the pleadings it is evident that there is really no difference between the parties as to facts, but appellants contend that the clause of the contract above quoted, upon which the judgment is based, is not en-

forceable for want of mutuality. It is true, in the event of fire, that appellees are to be the sole judges of the fact as to whether the premises have been rendered unfit for habitation for the purposes designed. They are also the sole judges as to whether they will cancel the lease, and also as to whether they will rebuild, but these were rights which appellees reserved in the contract, and with a full knowledge of same appellants entered into the contract and took possession of the premises. While the *clause* quoted is in a sense unilateral, still the same may be said of most any clause or stipulation in every contract. The question of mutuality is determined from a consideration of the *contract* in its entirety. Ordinarily contracts are made up of several clauses, covenants, and stipulations, and under each of which, as in this, one of the parties is perhaps the sole beneficiary, but each clause or covenant is treated as an inducement or consideration for the others. Appellants rely upon the case of Rehm-Zeiher Company v. F. G. Walker Co., 156 Ky., 6:

"Unless a contract is binding on both parties, it is not binding on either of them."

This proposition cannot be gainsaid because, treating the contract as a whole, it must be binding on both, or else it is binding on neither; but it has never been held that unless a single clause or covenant in a contract is binding on both parties, that is, reciprocal, then the whole contract, or such single clause of it is thereby invalidated.

Boiling down the contention of appellant, it seems that under this clause the lessors have the right to cancel the lease, while the lessees have no such right. If this clause constituted the whole contract there would be more force in the argument, but, as above indicated, leases are constantly made in which one of the parties is given various options or privileges without any corresponding privileges to the other, and it has never been held that the lease was rendered void by such a provision. Under section 3297 of the Statute the tenant is relieved of rent for the remainder of his term in case the building is destroyed by fire, but his right to contract otherwise is recognized, and that is what he did in this case. This court has frequently upheld the validity of an option to purchase premises during or at the termination of a lease, although it was conceded that the lessee could not be compelled to exercise such an

option. Taken separately, that is, not in connection with the other parts of the contract, such an option is unilateral, but this court has upheld them because they are a part of the contract as a whole, and treated as inducements or considerations actuating the parties in the beginning. The following are typical cases: Bank of Louisville v. Baumeister, 87 Ky., 6; Bacon v. K. C. Ry. Co., 95 Ky., 373; Murphy, Thompson & Co. v. Reed, 125 Ky., 585.

The Baumeister case supra makes the distinction in the following language:

"It is true, as argued, a contract must be mutual, and one party cannot be bound without the other. But that does not mean that any one or more acts to be done by one of the parties must necessarily be simultaneous with the consideration paid or agreed to be paid by the other."

The doctrine is also stated in the case of Bacon v. Ky. Central Ry. Co., 95 Ky., 373.

"It is now well settled that an optional agreement to convey or renew a lease without any covenant or obligation to purchase or accept, and without any mutuality of remedy, will be enforced in equity, if it is made upon proper consideration or forms part of a lease or other contract between the parties that may be the true consideration for it. In this clause the agreement was executed the same time with the lease and was a part of the same transaction and must for this purpose be treated as if part of the lease."

The court, in the same case, says:

"We must conclude that each and every stipulation on the part of one of the contracting parties is supported by and induced by each and every stipulation on the part of the other."

The case of Jones v. Fowler Drug Company, 120 Ky., 157, is conclusive on this question. The facts were similar to those in the case at bar, although the option in the Jones case was given to the lessee instead of the lessor as here. In the Jones case the lease provided, in effect, that if destruction, total or partial, ensued, so as to make the premises untenantable, the lessee might surrender and cancel the lease. The premises were partially destroyed by fire, and the lessee elected not to cancel the lease. It was held that the landlord would be required to continue the lease.

The only difference between the Jones case and this, is that in the former the lessee had the option of cancelling or continuing his lease, while here the lessors have this option. The provision was enforced in the Jones case, and it should be enforced in the case at bar.

Appellants' counsel call attention to hardships their client might suffer if appellees should delay beyond five days the notice to restore, or fail to prosecute with diligence the work of rebuilding. But these conditions are not presented in this case. The notice was given in five days, and it is evident the restoration was speedily done.

The judgment is, therefore, affirmed.